NORMAN H. LEVINE (SBN 061884)
SUANN C. MacISAAC (SBN 205659)
KRYSTAL M. HAUSERMAN (SBN 232713)
GREENBERG GLUSKER FIELDS
    CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590
Telephone: 310.553.3610
Fax: 310.553.0687
nlevine@ggfirm.com
smacisaac@ggfirm.com
khauserman@ggfirm.com

Attorneys for Defendant
Costco Wholesale Corporation

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARE ESCENTUALS BEAUTY, INC., a Delaware Corporation<br><br>Plaintiff,<br><br>vs.<br><br>COSTCO WHOLESALE CORP., a Washington Corporation,<br><br>Defendants. | Case No. 07 CV 0090 JLS (WMC)<br><br>**COSTCO'S NOTICE OF MOTION AND MOTION FOR REVIEW OF MAGISTRATE JUDGE'S ORDER GRANTING PLAINTIFFS' MOTION TO COMPEL DISCOVERY; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: November 12, 2007<br>Time: 9:00 a.m.<br>Courtroom: 6<br><br>[Declaration of Norman Levine, Appendix In Support of Motion and Proposed Order Filed Concurrently Herewith]<br><br>Trial Date: None Set<br>Action Filing Date: January 12, 2007 |

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2  PLEASE TAKE NOTICE that on November 12, 2007 at 9:00 a.m., or as

3  soon thereafter as the matter may be heard in Courtroom 6 of the above-referenced

4  Court, located at 880 Front Street, San Diego, California 90012, Defendant Costco

5  Wholesale Corporation ("Costco") will move this Court, pursuant to Rule 72(a) of

6  the Federal Rules of Civil Procedure, for an Order Reviewing and Vacating

7  Magistrate Judge William McCurine, Jr.'s Order, filed September 24, 2007 (the

8  "Order"), compelling Costco to disclose the identity of its confidential, supplier of

9  Plaintiff' Bare Escentuals' cosmetics (the "Motion").[1]

10  The Motion is made on the grounds that in concluding that the identity of

11  Costco's supplier of Bare Escentuals' cosmetics was <u>not</u> a protectable trade secret

12  under the Uniform Trade Secrets Act, the Magistrate Judge applied a legal standard

13  that is contrary to the established law, premised his decision on improper factors,

14  and ruled based on a clearly erroneous analysis of the undisputed evidence.

15  The Motion is based on this Notice of Motion and Motion, the

16  Memorandum of Points and Authorities, the Declaration of Norman H. Levine and

17  the attached Appendix of Exhibits 1 through 10 (the "Appendix") and the other

18  files and records in this proceeding and any other evidence which may be

19  introduced or made at the time of the hearing.

20  DATED:  October 5, 2007          GREENBERG GLUSKER FIELDS
                                       CLAMAN & MACHTINGER LLP
21

22                                 By:
                                       NORMAN H. LEVINE
23                                     Attorneys for Defendant
24                                     Costco Wholesale Corporation

25  _____
26  [1] The parties agreed that the Order, which required disclosure by October 8, 2007, would be stayed by the filing of this Motion so that the Court would have a
27  meaningful opportunity to review the Motion under Federal Rule 72.  Appendix Tab 10, pp. 118-19 (Email).
28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ...................................................................................1

II.  SUMMARY OF THE ARGUMENT .................................................1

III. FACTUAL AND PROCEDURAL BACKGROUND ....................4

IV.  ARGUMENT........................................................................................5

    A.   Standard Of Review. .................................................................5

    B.   Costco Seeks Review Because It Will Be Greatly Harmed If The
        Identity of Its Supplier Is Disclosed. .....................................6

    C.   The "First Sale" or "Exhaustion" Doctrine Provides a Complete
        Defense to Plaintiff's Claims Under Trademark Law.........................7

    D.   Costco Met Its Burden of Establishing that Its Supplier
        Information Is A Valuable Trade Secret. .............................................9

        1.   Supplier Information Can Be A Trade Secret Under The
            UTSA. ...............................................................................9

            a.   Costco's Argument. .....................................................9

            b.   Plaintiff's Response .......................................................11

        2.   Costco Established that the Identity of Its Suppliers Derives
            Economic Value From Not Being Generally Known. ...............12

            a.   Costco's Undisputed Evidence .....................................12

            b.   Plaintiff's Response .......................................................14

        3.   Costco Also Makes Substantial Efforts To Maintain The
            Confidentiality Of The Identity Of Its Vendors.......................14

            a.   Costco's Undisputed Evidence .....................................14

            b.   Plaintiff's Response .......................................................16

    E.   The Magistrate Judge Ordered Disclosure of Costco's
        Confidential, Supplier Information Based On Entirely Irrelevant
        Factors. ..................................................................................17

    F.   The Magistrate Judge Compounded the Legal Error By Refusing to
        Conduct an *In Camera* Inspection, Or Even Limiting Disclosure to
        A Strict Outside Attorneys' Eyes Only Protective Order. .................22

V.   CONCLUSION...................................................................................25

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21ˢᵗ Floor
Los Angeles, California 90067-4590

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

American Standard, Inc., v. Pfizer, Inc.
  828 F.2d 734 (Fed. Cir. 1987) ........................................................................10

Carpetmaster of Latham, Ltd. v. Dupont Floor System, Inc.
  12 F.Supp.2d 257 (N.D.N.Y. 1998)..................................................................10

Cities Service Oil Co. v. Celanese Corp. of America
  10 F.R.D. 458 (D. Del. 1950) .........................................................................23

Davidoff & CIE, S.A. v. PLD International Corp.
  263 F.3d 1297 (11th Cir. 2001) .........................................................................8

Medical Imaging Centers of America, Inc., v. Lichtenstein
  917 F.Supp. 717 (S.D. Cal. 1996) .....................................................................6

Duplan Corporation v. Deering Milliken, Inc.
  397 F.Supp. 1146 (D.S.C. 1974) ................................................................ 10, 21

Estate of Merchant v. C.I.R.
  947 F.2d 1390 (9th Cir. 1991) ...........................................................................5

Gorham Manufacturing Co. v. Emery-Bird-Thayer Dry-Goods Co.,
  92 F. 774 (C.C.D. Mo. 1899), affd, 104 F. 243 (8th Cir. 1900)......................12

Hartley Pen Co. v. United States District Court
  287 F.2d 324 (9th Cir. 1961) .............................................................. 20, 21, 24

Hudson Hotels Corp. v. Choice Hotels International
  995 F.2d 1173 (2d Cir. 1993) ..........................................................................10

In re Independent Service Organizations Antitrust Lit.
  162 F.R.D. 355 (D. Kan. 1995) .....................................................................7, 10

Medical Imaging Centers of America, Inc. v. Lichtenstein
  917 F.Supp. 717 (S.D. Cal. 1996) .....................................................................6

Morton v. Rank America, Inc.
  812 F.Supp. 1062 (C.D. Cal. 1993) .................................................................10

Prestonettes, Inc. v. Coty
  264 U.S. 359 (1924)..........................................................................................8

R & D Bus. System v. Xerox Corp.
  152 F.R.D. 195 (D. Colo. 1993) ......................................................................10

In re Remington Arms Co.
  952 F.2d 1029 (8th Cir. 1991) .........................................................................22

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

## Table of Authorities (Continued)

Page

**FEDERAL CASES** (continued)

Rowell v. William Koehl Co.
194 F. 446 (W.D.N.Y. 1912) ........................................................22

Sebastian International, Inc., v. Longs Drug Stores Corp.
53 F.3d 1073 (9th Cir. 1995) ....................................................2, 8

Sigma Chemical Co. v. Harris
794 F.2d 371 (8th Cir. 1986) .......................................................10

Tailor Made Golf Company, Inc., v. MJT Consulting Group, LLC
265 F.Supp.2d 732 (N.D. Tex. 2003) ............................................8

United States v. McConney
728 F.2d 1195 (9th Cir. 1984) overruled on other grounds
in Estate of Merchant v. C.I.R.,947 F.2d 1390 (9th Cir. 1984)........5

Water Serv., Inc., v. Tesco Chemicals, Inc.
410 F.2d 163 (5th Cir. 1969) .......................................................10

Wolpin v. Philip Morris Inc.
189 F.R.D. 418 (C.D. Cal. 1999)...................................................5

Yeti By Molly, Ltd. v. Deckers Outdoor Corp.
259 F.3d 1101 (9th Cir. 2001) ..................................... 10, 11, 12, 18

**STATE CASES**

Bridgestone/Firestone, Inc., v. Superior Court
7 Cal.App.4th 1384 (1992) ............................................ 9, 10, 20, 21

Hypertouch, Inc. v. Superior Court
128 Cal.App.4th 1527 (2005) .......................................................22

**OUT OF STATE CASES**

John Paul Mitchell Sys. v. Randalls Food Mkts.
17 S.W. 3d 721, 738 (Tex. Ct. App. 2000)...................... 11, 19, 20

Klein-Becker USA LLC v. Englert d/b/a/ Mr. Finest Supplements
(D.Utah Mar. 28, 2007) ............................................... 23, 24

**FEDERAL STATUTES**

Uniform Trade Secrets Act ............... 2. 3. 4. 9. 10, 11, 12, 14, 16, 17, 18, 19, 22, 25

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

## Table of Authorities (Continued)

Page

**FEDERAL STATUTES** (continued)

Federal Rule of Civil Procedure 26...........................................................................................**4**

Federal Rule of Civil Procedure 26A........................................................................................**20**

Federal Rule of Civil Procedure 26(a)(1) ...........................................................................**3, 18**

Federal Rule of Civil Procedure 26(c) .....................................................................................**22**

Federal Rule of Civil Procedure 26(c)(7) ................................................................................**25**

Federal Rule of Civil Procedure 72............................................................................................**5**

Federal Rule of Civil Procedure 72(a) ...........................................................................**(1), 1, 5**


**STATE STATUTES**

Cal. Civ. Code § 3426.1 ...........................................................................................................16

Cal. Civ. Code § 3426.1(d) .......................................................................................................10

**SECONDARY AUTHORITIES**

8 Wigmore on Evidence, 3d Ed., Sec. 2212 ............................................................................23

Rest. 3d Unfair Competition, § 39 ...........................................................................................17

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21ˢᵗ Floor
Los Angeles, California  90067-4590

1604818.1
71825-00180

Motion for Review of Magistrate Judge's Order

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, Defendant Costco Wholesale Corporation ("Costco") hereby moves for review of Magistrate Judge William McCurine, Jr.'s Order dated September 24, 2007 (the "Order"), by which the Magistrate Judge erroneously determined that the identity of Costco's supplier of Plaintiff Bare Escentuals Beauty, Inc.'s ("Plaintiff" or "Bare Escentuals'") merchandise is not a trade secret and that Costco is obligated to identify such supplier.  A copy of the Order is attached at Tab "1" to Costco's separately filed Appendix in Support of Costco's Motion (the "Appendix").

Contrary to the Magistrate Judge's ruling, that information is Costco's trade secret, and Plaintiff has not made a showing justifying its disclosure.  As demonstrated herein, the Order should be vacated because in concluding that the identity of Costco's supplier of Bare Escentuals' cosmetics was not a protectable trade secret, the Magistrate Judge applied a legal standard that is contrary to the established law, premised his decision on improper factors, and ruled based on a clearly erroneous analysis of the undisputed evidence.

## II.   SUMMARY OF THE ARGUMENT

This case is unusual because Plaintiff does not seek discovery to assist in prosecution of its claims.  Rather, Plaintiff has brought its claims simply as a means to enable it to take discovery.[2]

Indeed, Plaintiff has no legitimate claim against Costco.  Plaintiff's complaint alleges only claims for statutory and common law trademark

_____

[2]  The complaint alleges that prior to filing this lawsuit, Plaintiff contacted Costco to determine the identity of the supplier, and that it was only after Costco refused to divulge the information, that this lawsuit was filed.  Appendix Tab 8, p. 108 (Complaint,¶12).  Early in this case, Plaintiff also filed an *ex parte* application for limited expedited discovery so that it could "halt [Costco's] unauthorized sale of products" bearing Plaintiff's trademarks.  Appendix Tab 9, p. 113 (Ex Parte Application, p. 1).

1    infringement, and for unfair competition based on the identical facts, arising from

2    Costco's sale of Bare Escentuals cosmetics.  Appendix Tab (hereinafter "Tab") 8,

3    pp. 108-110 (Complaint ¶¶14-28).  As Plaintiff's counsel admitted in a filing

4    before the Magistrate Judge, the "first sale doctrine" provides Costco a complete

5    defense, unless Plaintiff can establish that the Bare Escentuals cosmetics sold by

6    Costco were counterfeit.  Tab 4, p. 46 (Plaintiff's Letter Brief, p.6).  This is

7    because under the "first sale doctrine," the right of a manufacturer to control

8    distribution of its trademarked merchandise does not extend beyond the first sale of

9    the product.  Sebastian Int'l, Inc., v. Longs Drug Stores Corp., 53 F.3d 1073, 1074-

10   75 (9th Cir. 1995).

11        Plaintiff submitted no evidence to the Magistrate Judge that supported even

12   an inference that the cosmetics sold by Costco were counterfeit.  Indeed, Plaintiff

13   admitted that the cosmetics at issue bore the markings of genuine, domestic

14   product.  Tab 3, p. 28 (Costco's Letter Brief, p. 3); Tab 6, p.100 (Plaintiff's Reply

15   Letter, p. 2, n.1).  Plaintiff therefore does not seek discovery to assist in the

16   prosecution of valid trademark infringement claim, but has prosecuted this case

17   solely to obtain discovery regarding Costco's confidential supplier.  Given the lack

18   of any evidence supporting Plaintiff's claims, the Magistrate should have been

19   particularly reluctant to compel disclosure of Costco's confidential, supplier

20   information.

21        Instead, although the Magistrate Judge found that "the identity of [Costco's]

22   supplier may have some economic value to Costco that Costco's competitors do

23   not know and would want to know for commercial reasons," -- which itself

24   established one of the two prongs of the requirements of a trade secret -- the

25   Magistrate ordered the vendor information disclosed.  Tab 2, p. 18  (9/24/07

26   Transcript, p. 2:14-18).  The Magistrate did so based on several factors which are

27   not among the factors relevant to establishing trade secret protection under the

28   Uniform Trade Secrets Act ("UTSA"), or under any case law interpreting it.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

2

1    Specifically, at a telephonic hearing on September 24, 2007, the Magistrate

2  Judge ruled that Costco's supplier of Bare Escentuals cosmetics is <u>not</u> a protectable

3  trade secret because:

4    1.    Costco obtained Bare Escentuals products from only a single source,

5  and the Magistrate was "unclear" as to whether a single source could ever be a

6  trade secret;

7    2.    Costco sold the merchandise in only ten locations, not the entire

8  chain;

9    3.    Costco and Plaintiff are not competitors;

10    4.    Plaintiff and Costco's supplier of the cosmetics are not competitors;

11    5.    Although the Magistrate found some economic value to the

12  information being kept secret from Costco's competitors, Costco's goal was to

13  prevent Plaintiff from determining the identity of the supplier (not its competitors);

14    6.    Plaintiff is as motivated as Costco to protect the information;

15    7.    Plaintiff is seeking only minimal information, which is basic to the

16  discovery process, and Rule 26(a)(1) of the Federal Rules of Civil Procedure

17  requires disclosure at the outset of names and addresses of witnesses; and

18    8.    The identity of Costco's vendor of Bare Escentuals cosmetics is raised

19  by at least three of Costco's affirmative defenses -- good faith purchaser without

20  notice, waiver and the first sale doctrine. Tab 2, pp. 18-21 (9/24/07 Transcript).

21    As demonstrated herein, <u>none</u> of these factors are relevant to a determination

22  under the UTSA as to whether Costco's vendor information is a trade secret.

23  Moreover, the Magistrate Judge compounded this legal error by (1) refusing to

24  conduct an *in camera* review of Costco's purchase documents which, if compared

25  against a list of authorized Bare Escentuals distributors and retailers, would

26  establish that the product originated with Plaintiff and therefore is genuine, or (2)

27  refusing to require that disclosure be under an outside-attorneys' eyes only

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1 protective order, either of which procedures would have been sufficient to

2 demonstrate that the complaint has no merit.

3       Accordingly, because the Order is based on a fundamental misunderstanding

4 of the applicable standards under the UTSA, and on a clearly erroneous analysis of

5 the undisputed evidence before the Magistrate Judge, Costco requests that this

6 Court vacate the Order and rule that Costco not be required to disclose the identity

7 of its supplier, or that it be required to do so under more restrictive procedures.

8 **III.   FACTUAL AND PROCEDURAL BACKGROUND**

9       Defendant Costco is a well-known, national operator of discount,

10 membership warehouses.  Its business consists of providing its member customers

11 with a wide variety of quality merchandise, including name brand merchandise, at

12 lower prices than its competitors.  Tab 3, p.36 (Pugmire Decl., ¶ 3).  Among the

13 products which it has sold are Bare Escentuals cosmetics, which is why Plaintiff

14 has brought this lawsuit.  Tab 8, pp. 107-108 (Complaint, ¶¶ 9-10).

15       Prior to filing the complaint, Plaintiff contacted Costco to determine the

16 source of Costco's supply of Bare Escentuals cosmetics.  Costco refused to

17 disclose the identity of its vendor on confidentiality grounds.  Id., p. 108, ¶12.  As

18 a result, on January 12, 2007, Plaintiff filed suit against Costco stating claims for

19 statutory and common law trademark infringement and unfair competition based

20 on Costco's sale of Bare Escentuals cosmetics.  Id., pp. 106-12.

21       During an early meeting of counsel, Plaintiff's attorney requested that

22 Costco divulge the name of its supplier of Bare Escentuals cosmetics as part of its

23 initial disclosures under Federal Rule 26.  In response, Costco's counsel confirmed

24 that it objected to the disclosure on trade secret grounds.  Thereafter, at an April

25 13, 2007, status conference, the parties raised the issue with Magistrate Judge

26 McCurine, who then set a briefing schedule to resolve the trade secret issue.  Tab

27 3, pp. 26-40; Tab 4, pp. 41-79 (Costco and Plaintiff's Letter Briefs, respectively).

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1   Pursuant to the Magistrate's order, Costco and Bare Escentuals filed
2   simultaneous letter briefs on April 23, 2007 (Id.), and simultaneous supplemental
3   letter briefs on May 1, 2007.  Tab 5, pp. 80-98; and Tab 6, pp. 99-104 (Costco and
4   Plaintiff's Reply Letters, respectively).  Magistrate Judge McCurine then held a
5   telephonic hearing on June 13, 2007, at which he allowed the parties to be heard
6   and announced his tentative ruling to compel disclosure.

7   The Magistrate Judge then took the matter under submission for several
8   months until September 24, 2007, when during another telephonic hearing, Judge
9   McCurine announced his order compelling Costco to disclose its supplier of Bare
10  Escentuals cosmetics by October 8, 2007.  Tab 2, p. 23 (9/24/07 Transcript, p. 7:7-
11  11).  Thereafter, the Magistrate Judge issued a minute order compelling the
12  production under a stipulated, protective order, which did not allow for the
13  production under an "attorneys' eyes only" designation.  Tab 1, pp. 1-2 (9/24/07
14  Order).  The parties thereafter, agreed that the filing of this Motion stayed the
15  Order under Federal Rule of Civil Procedure 72, so that the Court would have a
16  meaningful opportunity to review the Order.  Tab 10, pp. 118-19 (Email).

17  **IV.   ARGUMENT**
18      A.   Standard Of Review.
19  Under Federal Rule of Civil Procedure 72(a), although discovery issues can
20  be considered by the Magistrate Judge in the first instance, "the district judge to
21  whom the case is assigned shall consider . . . objections [to a magistrate judge's
22  order] and shall modify or set aside any portion of the magistrate judge's order
23  found to be clearly erroneous or contrary to law."  (Emphasis added).  The "clearly
24  erroneous" standard applies to factual findings.  "[L]egal conclusions [of the
25  magistrate] are freely reviewable de novo to determine whether they are 'contrary
26  to law.'"  Wolpin v. Philip Morris Inc., 189 F.R.D. 418, 422 (C.D. Cal. 1999)
27  (citing United States v. McConney, 728 F.2d 1195, 1200-01 (9th Cir. 1984)
28  overruled on other grounds in Estate of Merchant v. C.I.R., 947 F.2d 1390 (9th Cir.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1991)).  Rulings that are based on issues of fact and law that are closely intertwined are also reviewed *de novo*.  Medical Imaging Centers of America, Inc., v. Lichtenstein, 917 F. Supp. 717, 719 (S.D. Cal. 1996).

Here, regardless of which standard applies, the Court should vacate the Order because the Magistrate Judge applied a legal standard that is contrary to the established law, and based the Order on a clearly erroneous analysis of the undisputed evidence.

### B.   Costco Seeks Review Because It Will Be Greatly Harmed If The Identity of Its Supplier Is Disclosed.

Costco recognizes that most discovery motions are resolved by Magistrate Judges without the District Judge's involvement.  However, the matter at issue in this Motion is not one of mere relevance, burden or convenience, such as arise in ordinary discovery disputes.  Rather, the discovery at issue here -- the identity of Costco's supplier of Bare Escentuals cosmetics -- threatens Costco's business operations as it interferes with its relationship with its suppliers and, therefore, with sources of lawfully obtained products made available to Costco's members.

As discussed in the Declaration of Robert Pugmire, Costco's Vice President - General Merchandise Manager, Non-Foods (the "Pugmire Decl.") -- Costco goes to great lengths to protect the identity of its secondary market vendors. i.e., those vendors who sell name-brand products to Costco that Costco is unable to purchase directly from the manufacturer.  Costco's vendors are willing to sell to Costco because they know that Costco will protect their identities.  Tab 3, p. 37 (Pugmire Decl., ¶¶8-9).  Vendors fear that if their identities are disclosed, they will face reprisals and other measures from manufacturers for selling to Costco. Id. at ¶8.

Reprisals, and vendors' fear of reprisals, threaten Costco's sources of supply.  If vendors cannot rely upon continued confidentiality, they might not sell to Costco.  Id.  Here, the threat of reprisal is not mere speculation; Bare Escentuals has been seeking the vendors' identity since before this lawsuit was even filed, and

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21ˢᵗ Floor
Los Angeles, California 90067-4590

1  also filed an *ex parte* application for limited expedited discovery so that it could
2  "halt [Costco's] unauthorized sale of products" bearing its trademarks.  Tab 9, p.
3  113 (*Ex Parte*, p. 1).  The obvious intent being to identify and retaliate against the
4  supplier who sold to Costco.

5      Moreover, disclosure risks interruption of Costco's access to other, non-Bare
6  Escentuals merchandise.  The vendor that has supplied Costco with Bare
7  Escentuals cosmetics "has supplied Costco [with] a wide variety of products and
8  product lines (not only cosmetics) since 2005."  Tab 3, p. 39 (Pugmire Decl., ¶15).
9  Accordingly, the disclosure of the identity of Costco's Bare Escentuals vendor
10  risks interruption of Costco's access to a source not only of that company's
11  cosmetics, but of other merchandise as well.  Id.  Where, as here, there is a risk that
12  a litigant will use trade secret information to cut off a defendant's source of supply,
13  courts refuse to compel disclosure.  See, e.g., In re Independent Service
14  Organizations Antitrust Lit., 162 F.R.D. 355, 357-58 (D. Kan. 1995) (discovery of
15  trade secrets denied where even inadvertent disclosure raised risk that defendant
16  would act "to cut off [defendant's] source of supply").

17      C.  The "First Sale" or "Exhaustion" Doctrine Provides a Complete
18         Defense to Plaintiff's Claims Under Trademark Law.

19      As discussed above, Plaintiff's complaint alleges only claims for statutory
20  and common law trademark infringement and unfair competition based on the
21  same essential facts, arising out of Costco's sale of Bare Escentuals cosmetics.
22  Tab 8, pp. 108-110 (Complaint).  Since Bare Escentuals made a "first sale" of the
23  goods before Costco purchased them, it cannot prevail on any of its claims, unless
24  it can show that the merchandise sold by Costco was counterfeit.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1603238.4
71825-00180

1    The Ninth Circuit discussed the "first sale" rule[3] as it relates to trademark

2  law in Sebastian Int'l, Inc., v. Longs Drug Stores Corp., 53 F.3d 1073, 1074-75

3  (9th Cir. 1995):

4        Since 1924, courts have recognized a basic limitation on the

5        right of a trademark owner under the Lanham Act to control the

6        distribution of its own products.  Beginning with Prestonettes, Inc. v.

7        Coty, 264 U.S. 359 (1924), courts have consistently held that, with

8        certain well-defined exceptions, the right of a producer to control

9        distribution of its trademarked product does not extend beyond the

10       first sale of the product.  Resale by the first purchaser of the original

11       article under the producer's trademark is neither trademark

12       infringement nor unfair competition.  (Emphasis added).

13   The plaintiff in a trademark infringement case has the burden of proof with

14  respect to "first sale."  "The exhaustion or First-Sale rule is not an affirmative

15  defense.  Rather, it defines an area of commerce beyond the reach of trademark

16  law."  Tailor Made Golf Company, Inc., v. MJT Consulting Group, LLC, 265

17  F.Supp.2d 732, 740  (N.D. Tex. 2003).

18      Plaintiff does not dispute that the "first sale" doctrine applies here, or that its

19  application means that Plaintiff cannot prevail on its claims against Costco unless

20  it can show that Costco sold counterfeit Bare Escentuals products. Tab 4, pp. 46-

21  47 (Plaintiff's Letter Brief, pp. 6-7).  However, Plaintiff submitted no evidence to

22  the Magistrate Judge that any of the products sold by Costco were counterfeit.

23  Indeed, Plaintiff conceded at the April 13 status conference that it had no evidence

24  that the goods sold at Costco were not genuine, and that markings on the goods are

25  the same of similar to genuine domestic product.  Tab 3, p. 28 (Costco's Letter

26
_____

27  [3]  The "first sale" rule is sometimes referred to as the "exhaustion" doctrine.
Davidoff & CIE, S.A. v. PLD Int'l Corp., 263 F.3d 1297, 1301 (11th  Cir. 2001).

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1603238.4
71825-00180

8

Motion for Review of Magistrate Judge's Order

Brief, p. 3); Tab 6, p.100 (Plaintiff's Reply Letter, p. 2, n.1).[4]  Nor did Plaintiff submit any evidence to the Magistrate Judge suggesting that it is unable to determine whether the goods were genuine without reviewing Costco's supplier information (e.g., an inspection of the products).

Given the total lack of evidence that Costco ever sold counterfeit product, or that Costco's confidential, supplier information is even necessary to determine whether any of the products sold by Costco were counterfeit, the Magistrate Judge should have been very reluctant to compel the production of the supplier information, especially at this early stage of the litigation.  As explained herein, however, the Magistrate Judge ordered disclosure based on a fundamental misunderstanding of trade secret law.

D.    Costco Met Its Burden of Establishing that Its Supplier Information Is A Valuable Trade Secret.

In determining whether Costco is required to divulge its confidential vendor information, Costco bore the initial burden of demonstrating that the identity of its supplier is subject to protection.  Bridgestone/Firestone, Inc., v. Superior Court, 7 Cal.App.4th 1384, 1393 (1992).  Costco more than sustained that burden.

1.    Supplier Information Can Be A Trade Secret Under The UTSA.

a.    Costco's Argument.

Section 1(4) of the UTSA sets forth a test for trade secrets consisting of two, and only two, prongs.  Under the UTSA, a "trade secret" is "information, …that:

(1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can

_____

[4] The only evidence submitted to the Magistrate on the issue -- documents produced in redacted form as part of Costco's Initial Disclosures which demonstrate that the cosmetics were invoiced by MD Beauty -- which apparently either manufactured for, or purchased the goods from, Bare Escentuals -- to a redacted purchaser (other than Costco), strongly support the conclusion that the goods are not counterfeit.  Tab 4, pp. 56-57 (Plaintiff's Letter Brief, Exhibit 4).

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1    obtain economic value from its disclosure or use; and (2) Is the

2    subject of efforts that are reasonable under the circumstances to

3    maintain its secrecy."[5]

4    The definition is codified in virtually every state, including in California Civil

5    Code § 3426.1(d).

6    Case law, including within the <u>Ninth Circuit</u>, consistently establishes that the

7    identity of a confidential supplier is the type of information that can constitute a

8    trade secret under the UTSA, or various state equivalents. <u>Yeti By Molly, Ltd. v.</u>

9    <u>Deckers Outdoor Corp.</u>, 259 F.3d 1101, 1108 (9th Cir. 2001) ("The identity of a

10   supplier can be a trade secret."). Thus, where supplier or vendor information is

11   sufficiently confidential and secret to derive economic value, it is entitled to

12   protection. <u>Morton v. Rank Am., Inc.</u>, 812 F. Supp. 1062, 1073-74 (C.D. Cal.

13   1993); <u>see also</u> <u>Hudson Hotels Corp. v. Choice Hotels Int'l</u>, 995 F. 2d 1173, 1176-

14   77 (2d Cir. 1993) ("Compilations of information, traditionally viewed and

15   protected under trade secret law, are items like … supplier lists"); <u>Sigma Chemical</u>

16   <u>Co. v. Harris</u>, 794 F.2d 371, 374 (8th Cir. 1986) ("Sigma's knowledge of which

17   suppliers supplied which chemicals at the requisite quality and price" was a trade

18   secret); <u>Water Serv., Inc., v. Tesco Chemicals, Inc.</u>, 410 F. 2d 163, 170 (5th Cir.

19   1969); <u>Carpetmaster of Latham, Ltd. v. Dupont Floor Sys., Inc.</u>, 12 F. Supp. 2d

20   257, 262-63 (N.D.N.Y. 1998) (suppliers' identities were trade secrets under New

21   York law); <u>In re Independent Serv. Org. Antitrust Litig.</u>, 162 F.R.D. 355, 357-58

22   (D. Kan. 1995) (identities of parts supplier constitute trade secrets); <u>R & D Bus.</u>

23

24   [5] This action arises under federal law, and therefore federal privilege rules apply.
     Rule 501, Federal Rules of Evidence. Federal trade secret law is very similar to
25   California law, which is set forth in <u>Bridgestone/Firestone</u>, 7 Cal.App.4th at 1391.
     <u>Bridgestone</u> relies heavily on federal authority, including Federal Rule 26(c)(7),
26   <u>Duplan Corporation v. Deering Milliken, Inc.</u>, 397 F.Supp. 1146, 1185, (D.S.C.
     1974), and <u>American Standard, Inc., v. Pfizer, Inc.</u>, 828 F.2d 734, 742 (Fed. Cir.
27   1987).

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

Sys. v. Xerox Corp., 152 F.R.D. 195, 197 (D. Colo. 1993) (confidential supplier sources fall within the definition of trade secrets under Colorado law).

For example, John Paul Mitchell Sys. v. Randalls Food Mkts., 17 S.W. 3d 721, 738 (Tex. Ct. App. 2000), recognized that supplier identities are entitled to protection in the context of secondary market purchases, the exact situation here. Specifically, the court held that the identities of a distributor's suppliers of hair care products was a protectable trade secret.  John Paul Mitchell, a manufacturer of high-end hair care products, sued the defendants to stop diversion of its products to unauthorized retail stores.  17 S.W. 3d at 726.  The Court held that by guarding its sources of John Paul Mitchell hair care products, "Jade [had] met its burden of establishing trade secret protection for its list of suppliers."  Id. at 738.

b.    Plaintiff's Response

Despite the myriad of cases discussed above finding that supplier information can be a trade secret, Plaintiff argued to the Magistrate Judge that the Ninth Circuit's decision in Yeti represented the "rare situation in which a source of supply could constitute a trade secret," and attempted to distinguish that case by arguing that the sole reason the source of supply in Yeti was found to be a trade secret, was because revealing the identity of the supplier also revealed the secret material the plaintiff had used in her products.  Tab 4, pp. 44-45 (Plaintiff's Letter Brief, pp. 4-5).  Additionally, Plaintiff also argued that a single supplier could never be a trade secret under the UTSA.  Tab 6, p. 101-02 (Plaintiff's Reply Letter, pp 3-4.).  Neither of these arguments has merit.

As demonstrated above, the Ninth Circuit's holding in Yeti that supplier information can be a trade secret is not a "rare" holding, and in fact, is consistent with the case law from around the country.[6]  The bases on which Plaintiff attempts

---

[6] This law is not only consistent, but *long*-established.  "When a manufacturer parts with his goods, and they go upon the market, any third person has the right to purchase and sell them as he pleases; and the courts will not aid the manufacturer
*(continued…)*

1 to limit or distinguish <u>Yeti</u> find no support anywhere in the Ninth Circuit's

2 opinion. Indeed, <u>Yeti</u> expressly holds that "[t]he identity of <u>a supplier</u> can be a

3 trade secret." 259 F.3d at 1108. (Emphasis added). Although noting that the

4 plaintiff had testified at trial that she had confidentially shared the names of a

5 number of her suppliers with the defendant, the Ninth Circuit upheld the jury

6 verdict in the plaintiff's favor based on the defendants' misappropriation of the

7 identity of a <u>single</u> supplier, Malden Mills, that the defendant began using in the

8 production of its own shoes. <u>Id.</u>

9      The argument that Costco cannot establish trade secret protection for its

10 Bare Escentuals cosmetics supplier because it has only one supplier, is

11 counterintuitive, and <u>not</u> found anywhere in the UTSA. If anything, the fact that

12 Costco has only one source of the product makes the identity <u>more</u> valuable.

13 Plaintiff has cited no case law holding that the length of the supplier list affects its

14 status as a trade secret.

15          2.    <u>Costco Established that the Identity of Its Suppliers Derives</u>

16                <u>Economic Value From Not Being Generally Known.</u>

17               a.    <u>Costco's Undisputed Evidence</u>

18      The evidence Costco submitted before the Magistrate Judge <u>undisputedly</u>

19 demonstrated that the identity of Costco's vendors, including its vendor of Bare

20 Escentuals cosmetics, derives significant economic value from not being generally

21 known by either Costco's competitors, <u>or</u> by manufactures such as Plaintiff, who

22 are unwilling to sell directly to Costco, but are willing to spend thousands of

23

24 *(...continued)*
in suppressing their sale by a purchaser at prices which do not meet his approval by
25 permitting him, in litigation brought under the guise of protecting his trade-mark or
to suppress unfair competition, to examine the defendant or his witnesses to
26 discover where the goods were purchased." <u>Gorham Mfg. Co. v. Emery-Bird-</u>
<u>Thayer Dry-Goods Co.</u>, 92 F. 774, 779 (C.C.D. Mo. 1899), affd, 104 F. 243 (8th
27 Cir. 1900).

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

dollars in litigation costs to obtain the identity of Costco's vendors so that they can cut-off Costco's supply of their products.

As stated previously, the Pugmire Declaration confirms that the identity of Costco's vendors is commercially sensitive information which is not publicly known, and which has great value to Costco's business.  Tab 3, pp. 36-38 (Pugmire Decl., ¶¶ 3-13).  The declaration also establishes that Costco's ability to offer reasonably priced, quality merchandise that it is unable to purchase directly from manufacturers -- including name brand merchandise such as Bare Escentuals cosmetics -- is directly dependent on its sources of merchandise, on its ability relative to that of its competitors to source merchandise and to purchase at favorable prices, and on its ability to maintain relationships with suppliers and access to the merchandise they offer.  Id., p. 36, ¶4.  (Emphasis added)

Costco's business is thus dependent on its ability to obtain merchandise both from vendors in "primary" markets (i.e., directly from manufacturers and their designated distributors) and in "secondary" markets (i.e., from vendors or suppliers that are not the manufacturer itself or the manufacturer's designated representative).  Id.  Costco's confidential treatment of the identity of its vendors is essential to this process.  This confidentiality is "especially critical" when purchasing merchandise from the secondary market.  Id., p. 37, ¶8.  Many vendors fear reprisals from manufacturers for selling merchandise to Costco.  If Costco were to disclose the vendor's identity, then a manufacturer might attempt to eliminate the vendor's source of supply by terminating the distributor or forcing the distributor to raise its prices.  Id.  Vendors are willing to sell to Costco, as opposed to other discount retailers, or as opposed to not selling excess product to any discount retailers, because they know that Costco will protect their identities. Id.  All of this evidence was uncontradicted by Plaintiff.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

b.    Plaintiff's Response

In response to this undisputed evidence, Plaintiff first argued that Costco could not establish the value prong of the UTSA because disclosure would only give Costco's discount competitors, such as Sam's Club, the ability to purchase the product and this would "at most expose Costco to the same type of competition it faces from a myriad of other purveyors of Bare Escentual's goods, such as Sephora, Ulta, Nordstroms, Macy's, Bare Escentuals boutiques, and Bare Escentual's website." Tab 4, p. 44 (Plaintiff Letter Brief, p. 4). This argument, however, deliberately misses the point. Costco can only compete with anyone -- discounters or otherwise -- if it actually has merchandise with which to compete.

Moreover, Plaintiff's argument also fails to address the obvious value that the information has to a manufacturer like Plaintiff itself, who again, indisputably does not know the information, and who has filed litigation to obtain the information. Indeed, Plaintiff seeks the information precisely because it thinks it can obtain a significant economic advantage from the disclosure of Costco's supplier in this case, and from its resulting ability to interfere with Costco's source of supply and control where its products are sold. This is clear from Plaintiff's willingness to spend thousands of dollars to obtain the information.

Clearly, Costco has established that the identities of its second market suppliers, including its supplier of Bare Escentuals cosmetics, derives independent economic value from not being known by either Costco's competitors or by manufacturers like Plaintiff.

3.    Costco Also Makes Substantial Efforts To Maintain The Confidentiality Of The Identity Of Its Vendors.

a.    Costco's Undisputed Evidence

The Pugmire declaration also confirms -- and Plaintiff has made no effort to refute -- that it is Costco's "firm" policy and "consistent" practice to treat as confidential the identities of those of its vendors that are not the manufacturer itself

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

or the manufacturer's designated representative.  Tab 3, pp. 36-37 (Pugmire Decl., ¶¶6-7).  The declaration further confirmed that Costco goes to great lengths to keep the identities of these vendors confidential.  Employees who have knowledge of and/or interaction with its secondary market vendors are continuously aware of the critical importance of keeping the identity of vendors confidential, as are companies with whom Costco contracts.  Id., pp. 37-38, ¶11.

Costco, and its subsidiary National Clothing Company ("National"), through which Costco makes its secondary market purchases of apparel and other merchandise such as cosmetics, take great effort to assure that the dissemination of information regarding its vendors is restricted.  Id.  For example, the Pugmire declaration established that:

• Although National employees have their offices at Costco's headquarters in Issaquah, Washington, their offices and workspaces are in a single area, not intermixed with those of other Costco buyers and employees.  Id., p. 38, ¶11(a).

• Purchase orders and related documents maintained for National orders are kept on a computer software system which is separate from the system used for other purchase orders.  Access to the system is restricted to specific National employees, a few members of Costco's legal department, and possibly some members of the accounting department.  Id., ¶11(b).

• Both National secondary market buyers and Costco buyers who purchase in primary markets (known as "in line" buyers) are assigned to particular categories of goods, e.g. electronics, apparel.  Although there is interaction between National buyers and the in-line buyers who are responsible for the same type of merchandise, National buyers generally do not disclose the identity of their vendors even to the in-line buyers.  Id., ¶11(c).

• National routinely assures its secondary market vendors that their identity will be kept confidential unless National believes that the vendor did something

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1 wrong (such as knowingly supplying counterfeit merchandise) in connection with
2 the transaction.  Id., ¶11(d).

3       • In addition, all Costco employees (including National employees) are
4 governed by the confidentiality provisions of Costco's Employee Handbook.
5 Id.,¶12.
6 Again, Plaintiff was unable to contradict any of this evidence of confidentiality.

           b.      Plaintiff's Response

8       Plaintiff makes no effort to refute any of this overwhelming evidence of
9 confidentiality.  Its only argument in opposition is that Costco's showing was
10 inadequate because Costco "appears to have shared the name of its supplier" with
11 two other companies -- U.S. Merchants and National Distributing, and because
12 there was evidence that "five Costco" personnel had access to the information.
13 Tab 4, p. 45 (Plaintiff's Letter Brief, p. 5).

14      Disclosure to National Distributors, the Costco wholly-owned subsidiary
15 which does its purchasing, a handful of National's buyers and clerical personnel
16 who were responsible for the purchase, and U.S. Merchants, which repackages
17 merchandise for Costco, does not show the absence of efforts to maintain
18 reasonable secrecy.  Tab 5, p.86 (Pugmire Supp. Decl. ¶ 4).

19      The applicable standard under both the UTSA and the California Civil Code
20 is whether the information is "generally" not known to "other persons who can
21 obtain economic value from its disclosure."  UTSA § 1(4); Cal. Civ. Code §
22 3426.1.  Thus, under the express terms of the statute, the trade secret holder is not
23 required to foreclose any possibility of non-confidential disclosure.  The only
24 requirements are that the information be "generally" not known to persons who
25 would realize value from disclosure and that the information holder make
26 "reasonable" efforts to maintain secrecy.  Id.

27      The Restatement makes it clear that some disclosures of information does
28 not deprive that information of trade secret status.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1    To qualify as a trade secret, the information must be secret.

2    The secrecy, however, need not be absolute.  The rule stated in this

3    Section requires only secrecy sufficient to confer an actual or potential

4    economic advantage on one who possesses the information.  Thus, the

5    requirement of secrecy is satisfied if it would be difficult or costly for

6    others who could exploit the information to acquire it without resort to

7    the wrongful conduct proscribed under § 40. . . . [¶]  Information

8    known by persons in addition to the trade secret owner can retain its

9    status as a trade secret if it remains secret from others to whom it has

10   potential economic value.

11  Rest. 3d Unfair Competition, § 39 and cmt. (f) at 425, 431-432 (Emphasis added).

12         It would defy logic if in order for Costco to maintain the trade secret status

13  of its suppliers' identities, it was required to conceal that information from its own

14  subsidiary or from the company it uses to receive and repackage the merchandise.

15         E.    The Magistrate Judge Ordered Disclosure of Costco's Confidential,

16                Supplier Information Based On Entirely Irrelevant Factors.

17         Despite the forgoing evidence which satisfies both prongs of the trade secret

18  test under the UTSA, the Magistrate Judge ordered disclosure.  Specifically, at the

19  September 24, 2007 hearing, the Magistrate Judge ruled that Costco's supplier of

20  Bare Escentuals cosmetics was not a protectable trade secret, even though he

21  admittedly found some value in Costco's supplier information not being known by

22  Costco's competitors[7], because of the following factors:

---

[7]  During the September 24, 2007 hearing, the Magistrate Judge expressly recognized that "the identity of [Costco's] supplier may have some economic value to Costco that Costco's competitors do not know and would want to know for commercial reasons."  Tab  2, p. 18 (9/24/07 Transcript, p. 2:14-17).

1    1.    Costco obtained Bare Escentuals products from only a single source,
2    and the Magistrate was "unclear" as to whether a single source could ever be a
3    trade secret;

4    2.    Costco sold the merchandise in only ten locations, not the entire
5    chain;

6    3.    Costco and Plaintiff are not competitors;

7    4.    Plaintiff and Costco's supplier of the cosmetics are not competitors;

8    5.    Costco's goal was to prevent Plaintiff from determining the identity of
9    the supplier (not its competitors);

10    6.    Plaintiff is as motivated as Costco to protect the information;

11    7.    Plaintiff was supposedly seeking only minimal information, which is
12    basic to the discovery process. Fed. Rule 26(a)(1) requires disclosure at the outset
13    of names and addresses of witnesses; and

14    8.    The identity of Costco's vendor of Bare Escentuals cosmetics is raised
15    by at least three of Costco's affirmative defenses -- good faith purchaser without
16    notice, waiver and the first sale doctrine. Tab 2, pp. 18-21 (9/24/07 Transcript).

17    None of these factors are relevant to a determination as to whether Costco's
18    vendor information is a trade secret under the UTSA. As a preliminary matter,
19    with respect to the Magistrate's first factor -- whether the identity a single supplier
20    could ever be a trade secret -- as demonstrated above, the Ninth Circuit in Yeti
21    specifically stated that the identity of a single supplier can be a trade secret subject
22    to misappropriation. 259 F.3d at 1108.

23    Next, the Magistrate's second factor, i.e., the fact that Costco sold the Bare
24    Escentuals cosmetics in only ten stores, as opposed to its entire chain, is irrelevant.
25    Plaintiff cited no authority which suggested that this is a relevant consideration,
26    and the Magistrate Judge did not explain why he believed that it was. Nor is
27    Costco aware of any such authority. A trade secret can be held by a small business
28    with only limited operations, as well as by a large one. And there is no

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21ˢᵗ Floor
Los Angeles, California 90067-4590

1   requirement that a trade secret be essential to a retailer's entire operations to gain

2   protection.  That Costco chooses to sell certain merchandise at only some locations

3   does not mean that those sales are not valuable or important to Costco's operations

4   and business strategy.  The very fact that Costco cannot purchase secondary market

5   merchandise from the manufacturer means that the quantities available to it might

6   be limited.  Therefore, different secondary market merchandise is likely to be sold

7   at different locations.  If that fact alone means that each manufacturer can discover

8   the supplier(s) of its own products, Costco's ability to source and sell any

9   secondary market products would be significantly impaired.  Moreover, in <u>John

10  Paul Mitchell Sys.</u>, which is the most factually analogous case, it was clear that

11  Jade sold a whole array of products besides just John Paul Mitchell's hair care

12  products. 17 S.W. 3d at 726.[8]

13      <u>Third</u>, the Magistrate's third, fourth and fifth factors -- <u>i.e.</u>, the Magistrate's

14  finding that Costco and Plaintiff are <u>not</u> competitors, that Plaintiff and Costco's

15  supplier are <u>not</u> competitors, and that Costco was attempting to keep the

16  information secret from Plaintiff (and not its competitors) -- are also irrelevant.

17  Nothing in the language of the UTSA states that "other persons who can obtain

18  economic value from [the] disclosure or use" of a trade secret have to be

19  competitors, or that the persons who can obtain economic benefit from the

20  disclosure have to be part of the lawsuit.  The only requirement is that the

21  information derive value from not being known "to the public or to other persons."

22  There is no requirement that such "persons" be "competitors."  Again, <u>John Paul

23  Mitchell Sys.</u>, the most factually analogous case cited by the parties, involved

---

[8] Imagine the erosion of trade secret law if this were a relevant factor.  Food and
beverage companies which manufacture thousands of products all over the country,
would presumably be forced to divulge trade secret recipes for any product unless
they could establish that the product was essential to their operations.  Given the
number of products made and sold by certain companies, this might be impossible
to prove for even some of the most successful products, with the most valuable
trade secret recipes.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1   analogous relationships to those here, which clearly does involve some

2   competition. 17 S.W. 3d at 738.[9]   Moreover, the leading case in California on trade

3   secrets, <u>Bridgestone/Firestone</u>, indisputably is <u>not</u> a competitor case. 7 Cal. App.4th

4   at 1388.

5          <u>Fourth</u>, the Magistrate's sixth and seventh factors, <u>i.e.</u>, that the information

6   Plaintiff is seeking is "minimal," and that Plaintiff is equally concerned with its

7   confidentiality, shows a fundamental misunderstanding of the issues at stake in the

8   case.  The supposedly "minimal information" that Plaintiff is seeking -- the identity

9   of Costco's supplier of Bare Escentuals cosmetics -- is the entire reason the

10  complaint was even filed.  Once Plaintiff discovers the identity of Costco's

11  supplier, it will have accomplished its objective of being able to stop Costco from

12  selling its products without ever having a ruling on the merits of its claims.

13         <u>Finally</u>, the Magistrate's eighth factor , <u>i.e.</u>, that Costco's supplier

14  information is relevant to Plaintiff's claims and some of Costco's affirmative

15  defenses, does <u>not</u> come close to mandating production.  As Plaintiff even

16  conceded below, discovery of trade secret information is not based on mere

17  relevance, or on the disclosure requirements of Federal Rule 26(A).  Instead, to

18  discover trade secret information, disclosure of this information must be both

19  "relevant and necessary" to the action.  <u>Hartley Pen Co. v. United States District</u>

20  <u>Court</u>, 287 F.2d 324, 331 (9th Cir. 1961) ("[T]he burden rests upon the party

21  seeking disclosure to establish that the trade secret sought is relevant and necessary

22  to the prosecution or the defense of the case before a court is justified in ordering

23  disclosure."); <u>see also</u> <u>Bridgestone/Firestone</u>, 7 Cal.App.4th at 1393.  To meet this

24  burden, Plaintiff was required to make a "prima facie, particularized showing that

25  ─────────────────
    [9] The Magistrate's finding that Plaintiff and Costco are not competitors and the fact
26  that this informed his decision to compel disclosure is ironic given that Plaintiff's
    complaint states claims against Costco for "unfair competition." Tab 8, p. 110
27  (Complaint, ¶¶28-30).  And because, as quoted above in section IV.D.2.b, Plaintiff
    actually stated in its letter brief that Plaintiff and Costco were competitors.
28

1  the information sought is relevant and <u>necessary</u> to the proof of, or defense against,
2  a material element of one or more causes of action . . ., and that it is reasonable to
3  conclude that the information sought is essential to a fair resolution of the lawsuit."
4  <u>Bridgestone/Firestone</u>, 7 Cal.App.4th at 1393 (Emphasis added).  The
5  "particularized" showing must be more than merely allegations.  It must be based
6  on admissible evidence.  <u>Id.</u> at 1395-96; (<u>Duplan Corp.</u>, 397 F.Supp. at 1185 ("In
7  doubtful situations, production will not be ordered.").

8       As explained previously, Plaintiff submitted <u>no</u> evidence whatsoever that
9  any of the products Costco sold were counterfeit, or that even created an inference
10  that the products might be counterfeit.  Plaintiff <u>admitted</u> that the products at issue
11  bore the indicia of genuine, domestic product.  Tab 3, p. 28 (Costco's Letter Brief,
12  p. 3); Tab 6, p.100 (Plaintiff's Reply letter, p. 2, n.1).  Plaintiff also <u>failed</u> to
13  submit any evidence which established that it was incapable of determining
14  whether the Bare Escentuals products sold by Costco were counterfeit through any
15  other means besides obtaining the identity of Costco's supplier.

16       Thus, the fact that the identity of Costco's supplier is relevant to some of the
17  claims and defenses in this action did <u>not</u> itself support disclosure.  At a minimum,
18  before Costco could be compelled to disclose is supplier, Plaintiff was required to
19  submit evidence supporting some reasonable inference that Costco had sold
20  counterfeit product, and provide a detailed declaration establishing beyond dispute
21  that Bare Escentuals has <u>no</u> ability, whether through inspection or any other means,
22  to determine whether the product sold by Costco was counterfeit or genuine.  Until
23  Plaintiff makes such a showing, any request for supplier information is premature
24  and should be denied, at least without prejudice to re-raising the issue if further
25  discovery in the case provides a legitimate basis for the disclosure.  <u>Hartley Pen</u>
26  <u>Co.</u>, 287 F.2d at 331 (vacating district court order providing for disclosure of trade
27  secret without prejudice as premature where there was no evidence of relevance
28  and necessity).

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP 1900 Avenue of the Stars, 21st Floor Los Angeles, California 90067-4590

F.   The Magistrate Judge Compounded the Legal Error By Refusing to
     Conduct an *In Camera* Inspection, Or Even Limiting Disclosure to A
     Strict Outside Attorneys' Eyes Only Protective Order.

In addition to applying the wrong legal standard, the Magistrate Judge further compounded the error by (1) refusing to conduct an *in camera* review of Costco's various purchase invoices, which if compared against a list of authorized Bare Escentuals retailers, would have established that the product came from a legitimate source, or (2) by putting in place any other meaningful limit on the Costco's disclosure such as a strict outside attorneys' eyes only protective order.

Section 5 of the UTSA provides:

"In an action under this title, a court shall preserve the secrecy of an alleged trade secret by reasonable means, which may include granting protective orders in connection with discovery proceedings, holding in-camera hearings, sealing the records of the action, and ordering any person involved in the litigation not to disclose an alleged trade secret without prior court approval."  (Emphasis added)

Federal Rule of Civil Procedure 26(c) also permits the Court to issue a protective order providing that "a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way," and "that discovery be conducted with no one present except persons designated by the court."  Id. at (c)(5)-(7).  Under these provisions, courts have repeatedly reviewed documents or other materials claimed to contain trade secrets *in camera* when appropriate.  See, e.g. In re Remington Arms Co., 952 F.2d 1029 , 1033 (8th Cir. 1991); Hypertouch, Inc. v. Superior Court, 128 Cal.App.4th 1527, 1555 and n.16 (2005); Rowell v. William Koehl Co., 194 F. 446 (W.D.N.Y. 1912) (court held that a master would be appointed to inspect the defendant's box-making machine at its factory, and to report to the court regarding the device, so

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1  that, the court could determine whether the plaintiff was entitled to disclosure of

2  trade secret machine).

3      Cities Service Oil Co. v. Celanese Corp. of America, 10 F.R.D. 458 (D. Del.

4  1950), for example, involved a balancing of plaintiff's right to establish

5  infringement with defendant's right to protect its trade secrets.  Citing 8 Wigmore

6  on Evidence, 3d Ed., Sec. 2212, the Court noted that "as much privacy as possible

7  might be preserved by compelling disclosure no farther than to the judge himself,

8  or to his delegated master or auditor."  10 F.R.D. at 461.  While deferring a final

9  decision on the issue, the court set forth that several options, "among which may

10 be the appointment of an impartial expert or special master to assist the court by

11 examining, under a pledge of secrecy, into the matter of defendant's trade secrets

12 …"  10 F.R.D. at 460.

13     In its opening letter brief, Plaintiff cited the unpublished decision in Klein-

14 Becker USA LLC v. Englert d/b/a/ Mr. Finest Supplements, (D.Utah Mar. 28,

15 2007), for the proposition that the first sale rule does not apply to counterfeit or

16 stolen goods.  Costco does not claim otherwise (but Plaintiff makes no showing of

17 theft or counterfeiting).  The reference to Klein Becker is surprising, because other

18 rulings in that action support precisely the ruling Costco seeks here.

19     The Klein-Becker opinion, which was attached to Plaintiff's initial Letter

20 Brief, was a March 2007 ruling on a motion for preliminary injunction.  Tab 4, pp.

21 64-79 (Klein-Becker, 3/07 Order).  The plaintiff in the case had submitted

22 substantial evidence that the goods at issue were stolen, counterfeit or obtained by

23 fraud, and defendant submitted no contrary evidence.  Plaintiff Bare Escentuals

24 here, however, neglected to inform the Magistrate, that prior rulings in Klein-

25 Becker established strong protections for the supplier information.  In a prior,

26 December 2006 ruling, the court imposed an "attorneys-eyes-only" protective

27 order, to limit disclosure of the identity of the supplier, and specifically prohibited

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1  plaintiffs from contacting any of defendant's sources or taking adverse action

2  against them.  Tab 5, pp. 89-94 (<u>Klein-Becker</u>, 12/06 Order).  The court held that:

3     [T]he discovery on Defendants' sources should not be permitted to

4     create a de facto result for the case.  Defendants should not be

5     deprived of or damaged in their business relations by reason of

6     discovery for a preliminary hearing.  This case is analogous to those

7     protecting customer relations from pre-trial discovery.  Plaintiffs

8     should not now be permitted to take "action against the person and/or

9     entities that are stealing products"[10][1] because any such action would

10    effect a result in advance of adjudication." <u>Id.</u>, pp. 91-92.

11  The court further set forth that "the intention of this order is, pending further

12  order of the court, to completely handcuff Plaintiff from using the information to

13  take any action against any persons and/or entities that are supplying Defendants."

14  <u>Id.</u>, pp. 92-93.  The December 2006 Order was only modified on April 23, 2007,

15  when the court concluded, based on a further showing by plaintiff (presumably

16  including that on the motion for preliminary injunction), that some of the sources

17  were "illegitimate," and that therefore, "the protections against contact of

18  defendants' sources of supply [were] no longer justified." <u>Id.</u>, p. 96.

19  The present posture of this case is analogous to that in the <u>Klein-Becker</u> case

20  in December 2006.  This Court should rule as the Utah District Court ruled at that

21  time, and likewise should protect the information -- on the present record, any

22  disclosure should be limited to the Court or a Special Master, or at most, to <u>outside</u>

23  <u>attorneys of record</u> subject to strict restrictions on dissemination and use.  As in

24  <u>Klein-Becker</u>, the order can be modified later if plaintiff introduces new or

25  different evidence.  See also <u>Hartley Pen Co.</u>, 287 F.2d at 331 (Ninth Circuit case

26

27  [10] The phrase ("action against ... stealing products") was quoted from plaintiff's
opposition memorandum and was not a finding adverse to defendant.

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1 vacating District Court order that had granted trade secret discovery , without

2 prejudice, until party seeking discovery could show both relevance and necessity).

3     At a minimum, the Magistrate Judge should have ordered the disclosure

4 subject to a strict <u>outside counsel</u> "attorneys' eyes only" protective order.  Such a

5 procedure falls squarely within the scope of Section 5 of the UTSA and Federal

6 Rule 26(c)(7).  However, even such limited disclosure raises serious concerns.

7 Costco does not suggest that Plaintiff's counsel would intentionally disregard such

8 an order, but mistakes do happen.  Moreover, counsel is placed in the very difficult

9 position of having to advise a client without being able to state the complete basis

10 for the advice, which itself might create some understanding in the client as to the

11 identity of the supplier.  For these reasons, Costco strongly prefers that disclosure,

12 if any, be ordered only to the Court, the Magistrate Judge himself, or an appointed

13 special master.  Given the lack of any evidence supporting the complaint, this is

14 precisely the type of case were disclosure should either be denied as premature, or

15 at a minimum be limited to an *in camera* inspection.

16 **V.  CONCLUSION**

17     For these reasons set forth above, Costco respectfully requests that the Court

18 vacate the Order, and enter a new order denying the discovery without prejudice or

19 providing for *in camera* review of the information.  If the Court denies these

20 requests, Costco would also respectfully request that the Court order that the

21 disclosure be done pursuant to a strict outside attorneys' eyes only protective order.

22

23 DATED:  October 5, 2007     GREENBERG GLUSKER FIELDS

24         CLAMAN & MACHTINGER LLP

25     By:

26     NORMAN H. LEVINE

27     Attorneys for Defendant
    Costco Wholesale Corporation

28